THE PEOPLE *ex rel.* Commissioners of Highways

*v.*

THE BOARD OF SUPERVISORS OF IROQUOIS COUNTY.

*Filed at Ottawa November 10, 1881.*

BRIDGES—*inability of town to incur the whole expense—duty of county to give its aid.* Where the commissioners of highways of a town have determined that the construction of a bridge across any stream in their town in a public highway is necessary, and that the cost thereof is too great a burden to be reasonably borne by the town, and apply to the county board for an appropriation for one-half the cost of its construction, the commissioners having provided for the other half of the necessary expenses, the county board is required by law to make the desired appropriation from the county treasury. In such a case the county board has no discretion to refuse the aid sought.

APPEAL from the Appellate Court for the Second District;— heard in that court on writ of error to the Circuit Court of Iroquois county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. ROBERT DOYLE, and Messrs. KAY & EUANS, for the appellant:

Under the present legislation it is not a matter of discretion with the board of supervisors whether or not they will grant aid to a town in building a bridge, where it is shown to be an unreasonable burden on the town to pay the entire cost, etc., but the duty imposed upon the board is compulsory to grant the aid. Rev. Stat. 1874, p. 930, sec. 111; Hurd's Stat. 1877, p. 877, sec. 90; Laws 1879, title "Roads and Bridges," sec. 110; *City of Ottawa* v. *People ex rel.* 48 Ill. 239.

Mr. TRACY B. HARRIS, for the appellee, contended that an absolute duty to aid townships in the building of bridges is not imposed on boards of supervisors, but that they are authorized to grant such aid in their discretion, referring to

various statutes on the subject. Also, that *mandamus* will not lie to control the exercise of a discretionary power such as in this case, citing High on Extraordinary Remedies, 38; *County of St. Clair* v. *People*, 85 Ill. 396.

County commissioners who are invested by law with the power of directing that a portion of the expense incurred by the town in making a highway shall be paid out of the county treasury, and who have refused the exercise of this power in a given case, can not be compelled to exercise it by *mandamus*, it being of a judicial nature, and therefore not subject to control. And this is so, regardless of whether the commissioners have decided properly or improperly upon the application. High on Extraordinary Remedies, 301; citing *Inhabitants of Ipswich, Petitioners*, 24 Pick. 343.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The Highway Commissioners of Belmont township applied by petition to the county board of Iroquois county for an appropriation from the county treasury of $1400, to aid in the construction of a bridge across Sugar creek, in a public highway. The petition stated that the bridge was necessary; that the cost would be $2800; that to pay this sum for that purpose would be an unreasonable burden upon the town; that $1400 was all that could be raised in one year in the town for bridge purposes, and that the town had provided one-half of the funds necessary for building the bridge. The board of supervisors refused to make the appropriation. This is an application for a *mandamus* to compel an appropriation of the $1400 by the county authorities for this purpose.

The question presented is, whether, under these circumstances, the county board is clothed by law with a discretion enabling them to determine for themselves whether to make or refuse the aid sought.

In counties under township organization, by the laws of 1874, the entire control of all public roads was placed in the

41—100 ILL.

hands of the commissioners of highways for the respective towns. (See sec. 10, chap. 121, p. 914, Rev. Stat. 1874; also, sec. 107, *et seq.*) The board of supervisors were simply clothed with authority "to appropriate funds to aid" the highway commissioners "in the construction of roads and bridges in any part of the county, whenever a majority of *the whole board* of the county may deem it proper and expe- dient." (Sec. 57, chap. 34, p. 311, Rev. Stat. 1874.) And it was also provided, by another act, that·"when it shall be necessary to build, construct ·or repair any bridge or road in any town, (which would be an unreasonable burden to the same, the cost of which will be more than can be raised in one year by ordinary *road taxes* in such town,") on applica- tion by the highway commissioners, "the county board *may* (a majority of all the members elect voting for the same) make an appropriation of so much for that purpose as, *in their judgment,* the nature of the case requires, and the funds of the county will justify,—said appropriation to be expended under the supervision of an authorized agent or agents of the county board, if the county board shall so order." (Rev. Stat. 1874, chap. 121, sec. 111, p. 930.)

Under these enactments the county board had clearly, in all cases, a discretion to exercise, and had the power to deter- mine in what cases aid should be extended to town officers, and the extent of such aid; and that it might not be improvi- dently given, it required the sanction of "a majority of all the members elect," or of "a majority of the whole board," before such aid could lawfully be given.

A subsequent statute was passed and approved May 26, 1877, by which it was provided, that "when it shall be neces- sary to build, construct, or repair any bridge or road in any town, which would be an unreasonable burden to the same, the cost of which will be more than can be raised in one year by ordinary road taxes in such town, the commissioners of highways *shall* present a petition to the county board ＊ ＊ ＊

praying for an appropriation from the county treasury to aid in the building, constructing and repairing of such bridge or *road,* and such county board shall, when one-half the necessary funds have been provided for by the town authorities, appropriate the other half: *Provided,* that all unexpended surplus of any appropriation granted under the provisions of this section shall be paid back into the county treasury." (Laws of 1877, p. 193, sec. 70.)

This statute of 1877, in so far as it affects this question, was repealed by an act approved May 28, 1879, and was by that act reënacted, so far as it relates to *bridges* in any town, with some additional provisions not affecting this question, among which is one placing all funds to be raised under this section under the joint control of the highway commissioners and two persons to be appointed for that purpose by the county board. (Laws of 1879, p. 281, sec. 110.)

By section 10, of the act of 1879, (Laws 1879, p. 259, *et seq.*) highway commissioners of towns are charged with "the care and superintendence of highways and *bridges* therein," and it is made "their duty," among other things, "to cause the building of bridges, when the public interest or necessity requires it," and "to cause * * * bridges * * * over streams intersecting highways to be kept in repair," and, in a word, have the general control of the subject of roads and bridges. The county board have no such general powers on this class of matters. By the act relating to counties they have *the power* (Rev. Stat. chap. 34, sec. 57, p. 311,) to appropriate funds to aid the commissioners "in the construction of *roads* and bridges in any part of the county, whenever a majority of the whole board may deem it proper and expedient." In this the board has still discretion to give aid in any case where a majority of the whole board so order. But as we understand the act of 1879, this board has no discretion in a case like the present. When the commissioners of highways of any town have determined that the construc-

tion of a bridge across any stream in that town in a public highway is necessary, and that it is too great a burden to be reasonably borne by the town, and apply to the county board for such aid, the town authorities having provided for one-half of the necessary expense of such construction, the county board is unconditionally required by law to appropriate the other half from the county treasury.

We think the petition for *mandamus* shows upon its face all the facts required to warrant a *mandamus* as sought in this case, and the demurrer to the same was improperly sustained. The judgment of the Appellate Court is therefore reversed, and the cause remanded to that court, that the judgment of the circuit court may there be reversed, and the cause remanded for further proceedings in accord with the views here expressed.

*Judgment reversed.*