## THE BOARD OF SUPERVISORS OF McHENRY COUNTY
### V.
### THE PEOPLE EX REL., etc.

1. BUILDING OF BRIDGE BY A TOWN UNDER SECTION 111—MANDAMUS.
—Where a town builds a bridge by virtue of section 111, accepts and pays for it out of funds raised by the town, there is no legal duty resting upon the county to re-imburse such town for one half of the cost thereof. Therefore at the time of the filing of the petition herein and the granting of the writ, there was no such clear right to a writ of mandamus as authorized the court to award it.

Appeal from the Circuit Court of McHenry county; the Hon. C. W. Upton, Judge, presiding. Opinion filed February 9, 1883.

The commissioners of highways, the relators, in July, 1880, decided to build a bridge across Fox river on the public highway that leads from the village of McHenry in said township and county to Waukegan, and upon investigation ascertained that the probable cost of such bridge would be about $7,500.

This being a larger sum than could be raised by taxation upon a single year's assessment upon the taxable property of the township, the relators on the 22d day of July presented a petition to the supervisor of the town of McHenry, signed by themselves as commissioners of highways and twenty-five freeholders of the town, praying him to call a special town meeting to vote upon the proposition to borrow the sum of $7,-500, to construct the bridge. A special town meeting was called for, and held upon the 14th day of August, 1880, when the proposition to borrow such sum was carried by a vote of sixty-three in favor of it, to six against it. Thereupon the relators advertised that sealed proposals would be received from contracting bridge-builders for the construction of such bridge, which would be opened on the 10th day of September, 1880. They met upon that day, opened and examined the bids, and adjourned to the next day, when they decided to award the contract to Cunningham & Keepers, the proprietors of the Milwaukee Bridge and Iron Works, and on that day a contract was entered into, by which said Cunningham & Keepers agreed to construct a wrought iron bridge, according to certain specifications, and have the same completed and ready for public travel by the 1st of February then following, for which they were to receive the sum of $8,000, payable in monthly installments, of seventy-five per cent. of the monthly estimates, and all balances fully paid as soon as the bridge was completed. The bridge was constructed under this contract, and turned over to the relators between the 5th and 10th of January, 1881, and paid for by them from the proceeds of the bonds issued under the election of August 14th.

On the 11th of September, the day of letting the contract, the relators prepared the following petition to the appellants though dated of the 7th, which was presented to them on the 14th at their September meeting:

" To the Board of Supervisors of the county of McHenry, in the State of Illinois.

" The undersigned, commissioners of highways of the town of McHenry, in said county, would represent that a bridge is necessary to be built over Fox river where the same is intersected by the highway leading from McHenry to Waukegan, in said town. That the cost of building said bridge will be eight thousand two hundred dollars, which would be an unreasonable burden to said town, and more than can be raised in one year by ordinary road taxes therein, the amount raised by said taxes being only two thousand nine hundred fifty-two dollars and ninety-six cents (2,952.96), wherefore the said commissioners of highways hereby petition you for an appropriation of four thousand one hundred dollars (4,100), from the county treasury to aid in building said bridge. Dated at McHenry, Ill., the 7th day of Sept., 1880. Simeon Colville, Castor Adams, Martin Walsh, Com'rs of Highways."

At that meeting the petition was referred to a committee, with instructions to report at December meeting. At that meeting no other proceedings appear to have been taken except to appoint a special committee to consider said petition. On January 7th, at a special meeting, the committee reported that they went to McHenry and found an iron bridge so nearly completed that the supervisor informed them that it would be ready to turn over to the township authorities by the 8th of that month, and that the proceedings of the town had with reference to borrowing the money to build the bridge, appeared to be regular, and that such report was submitted without recommendation. The appellant thereupon refused the prayer of the petitioners, the relators. On the 7th of September, 1881, relators filed their petition for a mandamus in the Circuit Court of McHenry county against the appellant, to compel it to appropriate the sum of $4,100 from the county treasury, as asked in the petition presented to it. The cause

was heard upon petitions, answers and proofs, when the court *pro forma*, awarded the writ and the supervisors appealed.

Mr. IRA R. CURTIS, Mr. A. B. COON, and Messrs. T. D. & E. D. MURPHY, for appellant; that a demand and refusal, before a writ of peremptory mandamus can issue, are consonant with reason, justice and law, cited Dillon on Corporations, §§ 696, 697; Angell & Ames on Corporations, § 707; R. R. Co. v. Plummer, 37 Cal. 354; U. P. R. R. Co. v. Davis Co. 6 Kan. 256; State v. Saline Co. 45 Mo. 242; Macoupin Co. v. The People, 58 Ill. 195.

When the legislature seeks to grant the right of taxation to any other than to corporate authorities and for corporate purposes, it transgresses its power: The People v. Mayor, 51 Ill. 17; The People v. Salmon, 51 Ill. 57; The People v. The Common Council, etc. 51 Ill. 58; Howard v. St. Clair Co. 51 Ill. 130; Livingston v. Wider, 53 Ill. 302; Sleight v. The People, 74 Ill. 50; Marshall v. Silliman, 61 Ill. 218; Madison Co. v. The People, 58 Ill. 456; Decker v. Hughes, 68 Ill. 42; R. R. Co. v. City of Sparta, 77 Ill. 500; S. & I. S. R. R. Co. v. Co. Clerk, 74 Ill. 27; Hundley v. Lincoln Park Com'rs, 67 Ill. 565.

Mr. WM. BARGE and Mr. B. N. SMITH, for appellee; cited R. S. 1881, 963; Laws 1879, p. 208, § 110; The People v. Supervisors, 100 Ill. 640.

If the highway commissioners have the discretion to say whether a bridge is necessary or not, the court has no power to review their judgment: Brush v. Carbondale, 78 Ill. 74; Eyman v. The People, 1 Gilm. 4; Garlinghouse v. Jacobs, 29 N. Y. 297; Kingman v. Co. Com'rs, 6 Cushing, 306.

Jurisdiction can not be conferred upon a court by the appearance or consent of the parties where the court has not jurisdiction of the subject-matter: Williams v. Blankenship, 12 Ill. 122; Randolph Co. v. Ralls, 18 Ill. 29; Ginn v. Rogers, 4 Gilm. 131.

PILLSBURY, P. J. Sections 110 and 111 of the Road and

Bridge Law of 1879, Laws of 1879, page 253, provide two different modes of building necessary bridges when the cost will exceed the amount of money that can be raised in any one year upon the taxable property of the town.

When the entire cost of the proposed bridge would be an unreasonable burden upon the town, the town can, after providing funds for one half the cost, apply to the county board, under Sec. 110, to appropriate the other half, which being done, the funds thus raised are to be expended by and under the joint control of the commissioners of highways of the town and two persons appointed by the county board. But when the town is able to bear the whole cost of the bridge without creating a burden of debt upon it that would be unreasonab'e although the amount required is more than can be raised in any one year. Sec. 111 makes it the duty of the commissioners of highways to take the necessary steps to have a special town meeting called, and have a vote taken by ballot upon the proposition to borrow the money to construct the bridge. If the vote is in favor of the proposition, then town bonds are to be issued and sold, as required by the necessities of the town officers in the prosecution of the work. According to this method the entire work is under the supervision and control of the town authorities, and they adopt the specifications and plan for the bridge, enter into contracts for its construction, and expend the money as to them may seem best for the interest of the town.

In this case the relators decided that the bridge was necessary, and that its probable cost would be about $7,500, and that the bridge should be built under the provisions of Sec. 111, and the amount required being more than could be raised in one year by taxation, they proceeded to have a special town meeting called at which the electors, by a vote of sixty-three to six, approved of their action in the premises, and voluntarily assumed the burden of the entire cost of the proposed work. The relators then let the contract for the bridge and bound themselves to expend the money according to the terms of that contract. The bridge was built under their supervision alone, and they accepted it and paid for it with the funds

realized from a sale of the bonds of the town. The preliminary steps up to and including the letting of the contract for the construction of the bridge, were all taken before the petition to appellant for aid was presented to it, and the work proceeded under the direction of relators during the time the county board was investigating the merits of their application. By this action of the relators the county board was deprived of the right secured to it by Sec. 110 of the statute to have, by the persons to be appointed by the board, the joint control and expenditure of the money raised for such purpose.

This right was a substantial one, and the county board could not be deprived of it without its consent, by any act of the relators in determining beforehand the particular manner in which the funds should be expended, without consultation with the representatives of the county board. In case the county should make an appropriation to aid the town, it is as much interested in the proper expenditure of that portion of the money raised by the town, as it is in that portion appropriated by itself, for upon the economy exercised in expending the former will depend the amount of the surplus of the latter that is to be, under the statute, returned to the county treasury.

But it is urged that the county board should have made the appropriation at its September meeting and should not take advantage of its own delay. It will be noticed that the petition presented to the board does not contain the statement that the town had provided one half the funds necessary to complete the work, neither does it appear that any proof was offered before the board to aid the petition in that regard, and it would seem that as the board was not obliged to make the appropriation in the absence of such fact appearing to it in some way, and a reference to a committee to ascertain the rights and duties of the board, was but a proper exercise of the powers possessed by it to carefully guard the financial interests of the county. The delay to act finally upon the petition does not seem unreasonable under the circumstances of this case. This case is clearly distinguishable from that of The People

v. Iroquois County, 100 Ill. 640, as there, the town being unable to build the bridge without aid from the county, instituted proceedings exclusively under Sec. 110, and did nothing prejudicial to the rights of the county to have a voice in the expenditure of the funds raised to construct the bridge.

We hold, then, that where a town builds a bridge by virtue of the provisions of Sec. 111, accepts and pays for it out of funds raised by the town, there is no legal duty resting upon the county to re-imburse such town for one half of the cost thereof. At the time of filing the petition herein, and the granting of the writ there was no such clear right to a writ of mandamus as authorized the court to award it.

The judgment of the court will be reversed and the cause remanded.

Judgment reversed.