## BOARD OF SUPERVISORS OF MERCER COUNTY

v.

## TOWN OF NEW BOSTON, EX REL.

1. ONE PETITION FOR TWO BRIDGES.—One petition may properly embrace two bridges if it contains the necessary averments as to each.

2. BRIDGES—HIGHWAY COMMISSIONERS AND COUNTY BOARD.—While commissioners of highways may determine the necessity and location of a proposed bridge and make the contract for its construction, and in a proper case compel an appropriation by the county board in aid of its construction, they are not in any case where they seek to compel it, empowered to determine also the particular character and price of the bridge without first giving the board an opportunity to be heard in respect thereto.

3. CONSTRUCTION OF STATUTE.—The provision that the entire fund shall be "expended" not only "by" but "under the joint control of" the commissioners and two persons to be appointed by the county board confers upon the five persons jointly the power to determine for what specific kind and style of bridge, as well as to whom and when the joint fund shall be paid.

APPEAL from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding. Opinion filed July 27, 1883.

Messrs. TALIAFERRO & WHARTON, for appellants; that as the petition shows on its face that the petition to the supervisors for an appropriation came too late, the county is not bound to appropriate anything toward the building of the bridges, cited R. S. 1881, Ch. 121, § 110; The People v. Supervisors, etc., 100 Ill. 640; City of Ottawa v. The People, 48 Ill. 233; The People v. Supervisors, etc., 47 Ill. 256.

The petition should be in the name of the people and not of

the town, and is subject to demurrer for that reason: County of Pike v. The State, 11 Ill. 202; City of Ottawa v. The People, 48 Ill. 233.

Mr. I. N. BASSETT and Mr. J. C. PEPPER, for appellees; cited R. S., Ch. 121, §§ 110, 114; The People v. Supervisors, 100 Ill. 643.

PLEASANTS, J.   This was a petition by the commissioners of highways of the town of New Boston in the county of Mercer for a mandamus to compel the board of supervisors of that county to make an appropriation from its treasury of the sum of $2,925, to aid in building two bridges, to cost $2,795 and $3,055 respectively, over the Edwards river in said town, pursuant to Sec. 110 of Chap. 121 of the R. S. 1880, which provides: That "when it shall be necessary to construct  *  any bridge in any town  *  which would be an unreasonable burden to the same, the cost of which will be more than can be raised in one year by ordinary taxes for bridge purposes in such town  *  the commissioners of highways  *  shall present a petition to the county board of the county in which such town  *  is situated, praying for an appropriation from the county treasury to aid in the building *  of such bridge, and such county board shall, when one half the necessary funds have been provided for by the town authorities  *  appropriate the other half; *provided*, that all unexpended surplus of any appropriation that may be granted by the county under the provisions of this section shall be paid back into the county treasury.   And all funds provided to be raised under this section shall be expended by and under the joint control of the commissioners of highways of the town asking such aid, and two persons appointed by the county board of the county granting the same."

In addition to the facts so required to be shown in order to entitle the town to the appropriation, and that application therefor had been made by the commissioners and refused by the county board, the petition for the writ set forth that a copy of the petition so presented to the county board was

thereto attached and made part thereof; from which copy it appeared that the commissioners had "advertised according to law and accepted the proposal of the Mt. Vernon Bridge Company, of Mt. Vernon, Ohio, it being the lowest submitted," and that "a copy of the contract" was thereto attached. The copy last referred to not being found in the record we know nothing of the particular character of the bridge provided for, but enough appears to show that a contract for bridges of a particular character, with specifications prescribed and prices fixed, had been absolutely made.

To this petition a demurrer was interposed, assigning as causes therefor that such a contract had been made in advance of the application to the county board for aid, and also that the application was for aid to build two bridges, which was overruled and a peremptory writ awarded. Respondents appealed.

No reason is perceived why one petition may not properly embrace two bridges if it contains the necessary averments as to each. Although this statute uses the term "bridge" in the singular number, another furnishes the rule of construction, by which it "may extend and be applied to several." R. S., Chap. 131, Sec. 1, subdivision third.

But was the county board, upon this application, legally bound to grant the aid asked, for both or either?

It is not denied that the commissioners of highways may determine the necessity and location of the proposed bridge and make the contract for its construction; nor that in a proper case they may compel the appropriation by the county board in aid of its construction. The People v. The Supervisors of Iroquois County, 100 Ill. 640. But are they in any case where they seek to compel it, empowered to determine also the particular character and price of the bridge without first giving the board an opportunity to be heard in respect thereto?

If they have the exclusive power we see no reason why they may not exercise it and by an absolute contract, as in this case, before as well as after the appropriation. Yet the power to compel it in a proper case is not tantamount to an actual

appropriation in a given case; since whether the given case is a proper one may be made a judicial question which the commissioners can not determine. And it is contrary to sound policy and the general practice of the government to permit executive officers to assume obligations involving the expenditure of public money for any purpose, in advance of its actual appropriation for such purpose. So, also, the rule of natural justice would forbid that the county—having so large an interest in the use of the bridge and contributing equally to the means required to build it—should be denied all participation with the town in determining its character and cost. Hence, to support their claim, the commissioners should show for it some positive and reasonably clear warrant in the statute.

It is not to be found in those provisions alone which define their powers in respect to bridges constructed wholly with means of the town of which they are officers.

The section above quoted does not confer it in terms.. Nor do we there find anything from which it can be implied, unless it be the requirement that in the petition to the county board for the desired appropriation the cost of the proposed bridge shall be shown. But while this should be definite it need not be the cost of a bridge of any particular description, nor consequently the exact actual cost of any bridge whatever. The statute indicates nothing more specific than one t iat is necessary—by reasonable intendment, suitable and proper under all circumstances. A statement of the probable or estimated cost of such an one would therefore seem to be sufficient. If, however, the exact actual cost of one fully specified as to material, pattern and style were intended, that could be ascertained as well without as by means of an absolute contract for its construction. So then the power in question is not necessarily implied by the provision.

There are others which appear to negative the idea that the legislature intended to confer it. Thus, the *proviso* seems to anticipate an " unexpected surplus " of the county appropriation, not as an accident of rare or rarely possible occurrence, but a result to be naturally expected in consequence of mis-

takes in the estimates or of changes in the plan. It assumes that the actual cost will be determined at the time of the appropriation and opportunity thus be offered for effort to bring it as far within the appropriation as shall be consistent with a wise economy. The further provision that the entire fund shall be "expended" not only "by" but "under the joint control of" the commissioners, and two persons to be appointed by the county board, we think imports something more than that the latter shall act jointly with them in auditing bills made by the commissioners alone, and in making orders or delivering over the money for their payment. This would give to the commissioners, however ill judging, the exclusive control of the fund in its application to the accomplishment of the general object, provided only that the contract, however injudicious, be performed by the builder. That it is to be expended for a bridge is already determined beyond any control of the commissioners or county board. The courts will construe the contract, determine the question of performance, and compel payment of the price to the proper party, without regard to the will of either. What remains to be controlled, as affecting the expenditure, is the determination of the particular kind of bridge to be built and the person to be trusted to build it. All the power over this joint fund that is given—whether to the commissioners or to the appointees of the board, jointly or severally—is given by this one sentence of the statute, which confers it, whatever it may be, upon five persons designated, jointly and equally, without distinction between them as individuals or classes in any respect or particular whatever. If the power to determine for what specific kind and style of bridge, as well as to whom and when it shall be paid, is included, then it is conferred upon the five jointly; if not, whence do the commissioners of highways get it? We hold that it is included.

If to "expend" is no more than to weigh out, pay out or disburse, one may expend a fund without controlling the expenditure—as where the fund is that of another by whose order he expends it; or even when it is his own but his will is coerced, as to comply with the demand of a highwayman, or

choose between the expenditure and other evils. But to "control the expenditure" is to hinder, restrain or check it, in the exercise of a free will. The legislature provided that the appointees of the county should act jointly with the commissioners, not merely in expending but also in controlling the expenditure of the fund; and if the power extends at all beyond the mere act of disbursement we think it must, for the same reason, extend to the free exercise of judgment and choice between all the different specific objects presented as necessary and proper to effectuate the general purpose of the expenditure. No ground is perceived for its limitation at any intermediate point.

This petition having been presented for aid in a case where the exercise of this power or right on the part of the county board was forestalled by the act of the commissioners, was lawfully refused.

The Supreme Court has not been called upon to decide the question, but the construction thus given to the statute upon the point here involved is believed to be warranted by its terms and demanded by considerations of justice to the county.

Nor is it unfriendly to the object or beneficiaries contemplated, in whose favor we agree it should be liberally construed. We see no necessity for such a power, nor any advantage to the town from its possession, while its denial interposes some check to tendencies and temptations that may prove as harmful as they are obvious. For the error committed in overruling the demurrer the decree of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.