## BOARD OF SUPERVISORS OF LOGAN COUNTY
### V.
### ·THE PEOPLE EX REL., ETC.

1. ROAD AND BRIDGE ACT—EMERGENCY.—Where a bridge was washed away in February, 1883, and the question at issue was whether such an emergency as contemplated by the law which went into force July 1, 1883, continued and existed on the 1st of July. *Held,* that under the facts disclosed by the record there was then such an emergency as contemplated by the law, and it was competent to proceed with the work at once and present the petition for county aid during its progress or after its completion.

2. TWO TOWNS—COUNTY AID.—Where a bridge crosses a stream which is a town line or near it, the expense is to be sustained by the two towns, and when, as an additional feature, the facts bring the case within the purview of section 19 of the Road and Bridge Act, the two towns may jointly seek aid from the county.

3. INSTRUCTIONS—PUBLIC HIGHWAY.—Although one of the instructions as to the road being a public highway, stated the law inaccurately in one or two points, yet had the instruction not been given at all, or had it been properly modified, the jury must certainly have found as they did upon this point; the defect is not sufficient ground to reverse.

ERROR to the Circuit Court of Logan county ; the Hon. CYRUS EPLER, Judge, presiding. Opinion filed October 5, 1885.

Messrs BEACH & HODNETT and Mr. ROBERT HUMPHREY, for plaintiff in error; that the statute upon which this proceeding is based was not passed until after the bridge was swept away, and has a prospective operation only, cited Thompson v. :Alexander, 11 Ill. 54; Conway v. Cable, 37 Ill. 82; Robinson v. Rowan, 2 Scam. 499 ; Knight v. Begole, 57 Ill. 122 ; *In re* Tuller, 79 Ill. 99 ; Marsh v. Chesnut, 14 Ill. 223 ; Town of La Salle v. Blanchard, 1 Bradwell, 635 ; People v. Thatcher, 95 Ill. 109.

Messrs. BLINN & HOBLIT, for defendants in error.

WALL, P. J.    This was a proceeding by mandamus to compel the county of Logan to contribute one half the cost of a certain bridge, under Sec. 19, Ch. 121, R. S.

There was judgment according to the prayer of relator's petition, and the record is brought here by writ of error, at the instance of the county. In the month of February, 1883, a bridge across Sugar Creek, on the line between the towns of West Lincoln and Sheridan, was swept away by high water. The commissioners of highways of the two towns met in April and agreed to rebuild, the cost to be borne equally by the towns. A contract was let, in June, for a pile bridge, similar to the old one, and a petition was presented to the board of supervisors, at the June meeting, asking for county aid, to which the board responded by appropriating $550, which was not expended. The contractor got ready to build the bridge as soon as the stage of water would permit, and it was then found that by reason of the condition of the bed of the stream piles could not be driven. This condition had been produced by the washing away of the gravel and clay which had previously been there, leaving nothing but hard-pan and a rocky formation into which it was impossible to force the piles. This became known about the latter end of August, and the commissioners of the two towns then determined to build an iron bridge, with stone abutments. In order to accomplish this during the current year, it was necessary to act promptly, so that the mason work could be done during the low water of autumn, otherwise it would be deferred until the next year. There was a pressing necessity for the bridge, to accommodate the public, and the commissioners, after giving notice as required by law, let the contracts for an iron bridge and stone abutments, on the 10th of September, and on the following day presented a petition to the board of supervisors, asking for county aid in the sum of $2,060, to meet half the expense. This petition was not accompanied by an estimate of the cost, etc., sworn to by the commissioners, as required by Sec. 19, Ch. 121, but the county board acted upon the petition and appropriated $1,000. In December, another petition was presented which was not noticed by the board, praying for the balance, $1,185. In June, 1884, after the work was all done, another petition was presented to the board, which it may be assumed was in proper form and sufficient to call for the ac-

tion of the board if it was presented in due time; and here arises the first legal question we are to consider.

The Road and Bridge Act was amended in 1883, and the provision for county aid, in cases where a bridge, to be built by a town, is an unreasonably heavy burden for the town, which had been contained in former statutes, was re-enacted as section 19, above referred to. This section is unlike the previous provision, section 110 of the act of 1879 ; but the only points of difference necessary to be noticed now are in the two provisos at the end of the section, the first of which is to the effect that " before any bridge, etc., shall be constructed under the provisions of this section, the commissioners shall make a careful estimate of the probable cost of the same, and attach thereto their affidavits that it is necessary, and will not be made more expensive than is needed for the purpose desired, and such estimate and affidavit shall be filed with the petition."

The second is as follows: "Provided, that in case of some emergency arising from the sudden destruction or serious damage to a bridge or its approaches, when delay in repairing or rebuilding would be detrimental to the public interests, such petition to the county board may be presented " during the progress of the work, or after its completion, and if the facts appear as contemplated by this section, the county board shall appropriate one half of such cost with like conditions that the town shall pay the other half."

The law as thus amended took effect July 1, 1883. Assuming that under the former statute the petition to the county board must have been presented before the work was done, the question occurs whether the present case is within the act of 1883, which allows the petition to be presented, upon a certain contingency, during the progress of the work or after its completion. The act of 1883 repealed and took the place of the previous act, but as the bridge had been destroyed in February, before the passage of the act, it is contended the case is not within its provision. It is said the law must operate prospectively, there being no evidence that it was intended by the legislature to be retroactive, and this view, certainly

correct, is not controverted by counsel. What is meant by the phrase " some emergency arising from the sudden destruction of a bridge," is a point, however, upon which counsel do not agree. The statute should receive a fair, not a loose, nor an illiberal construction, having in mind the object to be accomplished. That object is to furnish suitable and necessary bridges for the accommodation of the public and to provide an equitable mode of dividing the burden thereof between the taxpayers of the locality, and the county at large. The People, etc., v. The Board, etc., 100 Ill. 640. Whether the contemplated emergency exists will depend upon the facts of the particular case. In the present instance it arose when the bridge was washed away, in February, and continued and existed on the 1st of July, when the amendment went into force. When in the exercise of ordinary and reasonable diligence, under all the circumstances, it was discovered in the latter part of August that piles could not be driven into the bed of the stream, it became highly important that there should be prompt action in order to provide the only bridge then practicable, viz., one with stone foundations, before another winter and spring should intervene. We are of opinion that upon the facts disclosed by the record there was then an emergency such as contemplated by the law, and that it was competent to proceed with the work at once, and present the petition for county aid during its progress or after its completion ; and conceding, without deciding, that the board could not waive the defect in the petition of Sept. 11th, we hold it is no valid objection that a sufficient petition was not presented till June, 1884, after the work had been fully completed.

Various questions of fact were tried by jury, and special findings were returned, and among others were the 16th, 17th and 18th, which were, in effect, that about the latter part of August the commissioners found it not practicable to build a wooden bridge; that after this discovery there was an emergency requiring immediate advertising and letting said iron bridge, and that delay would have been detrimental to the public interest. There was ample support in the evidence for this conclusion of the jury. It is objected that there is no

authority for the filing of a petition by two towns jointly. The case of a bridge to be built by two towns, is within the letter and spirit of section 19. Where a bridge crosses a stream which is a town line, or near it, the expense is to be sustained by the two towns, and when, as an additional feature, the facts bring the case within the purview of section 19, the two towns may jointly seek aid from the county. Here the two towns had agreed to rebuild, at joint expense, and had entered into contract accordingly, pursuant to Secs. 21 and 22. We deem the objection not well taken. It is objected also that the proof fails to sustain the allegation that the bridge is on the town line. The jury found the allegation to be true, and the evidence justified them in so finding. It is urged also that there is no proof that the bridge was on a public road. Here, again, the finding of the jury is for the relators and is amply supported by the evidence. The road has been used, recognized and worked as a public highway for many years, and there was really no conflict on this point. Several witnesses testify that it was laid out ten or twelve years before, and was kept up by the authorities. It was much traveled— and the county board, by responding favorably to two petitions for county aid, have furnished evidence that they considered it a public highway. Only one witness is produced who seems not to have known that it was extensively traveled and this finding of the jury was to be expected from the evidence before them. There was evidence enough in this point to have sustained a conviction of the commissioners upon an indictment for not keeping it in repair; Eyman v. The People, etc., 1 Gil. 4, where the Supreme Court say, "if a road is used and traveled by the public as a highway and is recognized and kept in repair as such by the county commissioners and supervisors, whose duty it is, by law, to open and repair public roads, proof of this fact furnishes a legal presumption, liable to be rebutted, that such a road is a public highway." See also Nealy v. Brown, Ibid. 12; C. & A. R. R. Co. v. Adler, 56 Ill. 344; I. C. R. R. Co. v. Benton, 69 Ill. 174.

It is urged also that the second instruction for defendant in error was erroneous, and worked such prejudice that the judg-

ment should be reversed. It is as follows: " The court instructs the jury that if they believe from the evidence that the road on the town line, between the towns of West Lincoln and Sheridan, across Sugar Creek, had been ten years an open public road, and had been recognized as such by the owners of the land over which it runs, and also by the public authorities of the towns of West Lincoln and Sheridan, as a public highway, and worked and repaired, and bridges built across the stream by said authorities, then that is sufficient proof of the existence of a public highway in this case."

It is said there is no evidence that the road had been recognized as such by the owners of the land over which it runs. This is true, and it has often been held that instructions must be based on evidence. It is also a just criticism that the instruction should have informed the jury that the facts stated afford *prima facie* evidence of the existence of a public highway, rather than, as is said, that they are " sufficient proof " of its existence. But had this instruction not been given, or had it been modified in the respects mentioned, the jury must certainly have found as they did upon this point. They could not reasonably have found otherwise, and entertaining this view of the case we can not regard the defect in this instruction as a sufficient ground upon which to reverse the judgment.

Considering the whole record, we find that substantial justice has been done according to the forms of law, and therefore the judgment of the circuit court is affirmed.

Affirmed.