THE TOWN OF NEW BOSTON

*v.*

THE BOARD OF SUPERVISORS OF MERCER COUNTY.

*Filed at Ottawa May 19, 1884.*

1. BRIDGES—*county aid—of the discretion of the county board.* Where the commissioners of highways have determined that the construction of a bridge or bridges across any stream in their town is necessary, and that the cost thereof is too great a burden to be reasonably borne by the town, and apply to the county board for an appropriation for one-half of the cost of its construction, having first provided for the other half of the necessary expenses, under the act of 1879 the county board has no discretion to refuse the aid sought.

2. SAME—*whether too late to apply for county aid after contract is made—who to determine the character of bridge to be built.* Application to the county board for such an appropriation is not too late after the commissioners of highways have let the contract for building the bridge. The committee appointed by the county board have nothing whatever to do in connection with the commissioners of highways, or otherwise, in determining the character of the bridge to be built or in the letting of the contract to build the same. Those matters are intrusted by law exclusively to the commissioners of highways.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Mercer county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. I. N. BASSETT, and Mr. J. C. PEPPER, for the appellant.

Mr. J. C. WHARTON, and Mr. B. C. TALIAFERRO, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The relator in this case shows, by its petition, filed December 18, 1882, that Edwards river runs through the town of New Boston from east to west, which makes it necessary to keep up a number of costly bridges in the town, and that two certain bridges—one on the Keithsburg road and the other on the Aledo road—had become unfit for use, and that such roads were great public thoroughfares in such town, and bridges over the river where these highways cross it are absolutely necessary to accommodate the public. The amount necessary to construct the respective bridges is stated, and also the amount that could be lawfully raised in any one year for bridge purposes, by taxation, is stated, and it is then alleged that the relator has provided funds necessary to pay for one-half of the expenses for the construction of such bridges, and that the cost of building either or both of such bridges would be an unreasonable burden on the town. It is also further set forth, the commissioners of highways of such town having determined to build the bridges at the points indicated, they presented a petition in writing to the board of supervisors of Mercer county, at their meeting in December, 1882, setting up and showing the facts as above alleged, and asking for an appropriation from the county treasury to pay one-half of the cost and expenses of building each bridge, (a copy of which petition was attached to and made a part of the petition herein,) and that the board of supervisors refused to make any appropriation to aid in building such bridges.

Section 110, of the act of 1879, in relation to "roads and bridges" in counties under township organization, under

which this proceeding was instituted, was considered by this court in *The People* v. *Supervisors*, 100 Ill. 640, and it is unnecessary now to do more than restate the construction therein given to it.   It was held in that case, when the commissioners of highways of a town have determined the construction of a bridge across any stream in their town is necessary, and that the cost thereof is too great a burden to be reasonably borne by the town, and apply to the county board for an appropriation for one-half the cost of its construction,—the commissioners of highways having provided for the other half of the necessary expenses,—the county board is required by this statute to make the desired appropriation from the county treasury, and that in such a case the county board has no discretion to refuse the aid sought. It will be seen the facts alleged in the petition in this case, and admitted by the demurrer, are precisely analogous with the facts in the case cited, except in the present case the commissioners of highways have determined to construct two bridges over a stream in the town they represent, and ask aid for both of them.   That fact can make no difference. The language of the statute is, "when it shall be necessary to construct or repair any bridge in any town," and certainly when public necessity requires it to be done, the authority to construct more than one bridge at a time is as clear as it is to construct them separately.   Any other construction is too illiberal to be adopted.

The application to the county board, which is made a part of the petition herein, shows the commissioners of highways had previously let the contract, at prices agreed upon, for constructing both bridges, and it is therefore contended the petition shows on its face the application to the county board came too late, and that the board was not bound to make any appropriation in aid of the construction of either of such bridges.   It is quite clear, from a consideration of all the provisions of the statute on this subject, the matter of con-

structing and repairing bridges is committed exclusively to the commissioners of highways of the town. As a general proposition this much is conceded, but it is insisted, in cases where the county is called upon for aid, that clause of section 110 which declares that all funds to be raised under this section "shall be expended by and under the joint control of the commissioners of highways of the town asking such aid, and two persons appointed by the county board of the county granting the same," creates an exception to the general rule. The construction contended for can not be adopted. Plainly it is the duty of the commissioners of highways to let all contracts for the construction of bridges in their respective towns. This is so because the statute has so provided, and no other mode of letting contracts for bridges is provided in cases where county boards are required by law to furnish aid. All this clause of the statute means is, that the money provided, both by the town and that appropriated from the county treasury, shall be "expended" by and under the joint control of the highway commissioners and the two persons appointed by the county board,—that is, it is made their duty to see that the money so raised and appropriated *is* "expended" for the purposes intended, and not otherwise. It is the duty of these persons to so control the money that it may be used exclusively to pay for such public improvements in which both the town and county are interested, as the work may progress. There is not the slightest indication anywhere in section 110, or elsewhere in the statute, the two persons to be appointed by the county board granting the aid shall act with the commissioners of highways of the town in determining the character of the bridges to be built, or in the letting of the contracts to build them. That matter is intrusted exclusively to the judgment and discretion of the commissioners of highways of the respective towns. As the legislature has seen fit to commit such matters to the management

of the local officers of the town, it is not the province of the courts, by judicial construction, to place it elsewhere.

The petition herein shows on its face all the facts required to warrant a *mandamus*, as sought, and the demurrer thereto was improperly sustained. The judgment of the Appellate Court will therefore be reversed, and the cause remanded, with directions to that court to reverse the judgment of the circuit court, and remand the cause for further proceedings conforming to the views expressed in this opinion.

*Judgment reversed.*

Mr. Justice Walker: I hold that under the 110th section the commissioners, on ascertaining the cost of the bridge, may petition the county board, so as to enable it to appoint two persons to act in the expenditure of the money, and to take part in adopting plans and making contracts for its construction. I hold the statute did not contemplate that the two persons thus appointed should act only in paying the money. The expenditure involves something more than its mere payment on contracts made by the road commissioners. It implies that they shall participate in every step from the time plans are proposed, and the making of contracts,—in other words, to participate in everything which incurs liability to pay for constructing the bridge, as well as paying for it. I therefore hold, as the bridge was contracted for before aid was asked, the county board was not liable to contribute to its construction.