## THE BOARD OF SUPERVISORS OF LOGAN COUNTY

*v.*

## THE PEOPLE *ex rel.* Commissioners of Highways of the Towns of West Lincoln and Sheridan.

*Filed at Springfield March 27, 1886.*

1. BRIDGES—COUNTY AID—*of the time of making the application.* A bridge was washed away in February, 1883, while the Road law of 1879 was in force. About the last of May following, the commissioners of highways met and agreed to rebuild the same, and in May or June, 1883, made a contract for a new wooden bridge, to be set upon piles, and obtained a county appropriation to aid in its construction, which was not drawn. The contractor went to work in August, 1883, and found it impracticable to build a pile bridge, when he was released, on September 10, 1883. On proper notice a contract was let for the building of an iron bridge on stone abutments, and on the next day the commissioners presented their petition to the county board, setting up the making of the contract, with the reasons and necessity therefor, and asking for an appropriation of one-half of the contract price. The county board appropriated a part only, and refused to give any further aid: *Held,* that if the petition to the county board showed the facts required by section 19 of the Road law of 1883, to authorize an appropriation of any part of the amount demanded, the county board had no discretion to refuse the whole amount named in the petition, and that the application was not made too late.

2. SAME — *emergency* — *destruction of bridge before act of 1883 took effect.* An emergency for the speedy rebuilding of a bridge under section 19 of the Road and Bridge law of 1883, may exist, although it originated before that law took effect. Under that section it is made the duty of the commissioners of highways to let the contract for the new bridge before applying to the county board for aid, even if the emergency which made it detrimental to the public interests to delay the rebuilding of the bridge, occurred before or after the act of 1883 took effect. The time when the emergency occurred is not material, but rather the fact that delay in rebuilding would be of public detriment.

3. HIGHWAY—*proof of its existence—when the fact is directly in issue, or only questioned collaterally.* Where the existence of a public highway is directly in issue, it must be proven either that it has been laid out in pursuance of a law of the State, or that it has been established by dedication, or used by the public as a highway for twenty years. But where its existence is only collaterally in issue, it is sufficient to show that it has been used and traveled as a highway by the public, and recognized and kept in repair such by those having charge of the roads. This is *prima facie* evidenc. its existence, but liable to be rebutted by proof to the contrary.

APPEAL from the Appellate Court for the Third District;— heard in that court on writ of error to the Circuit Court of Logan county; the Hon. CYRUS EPLER, Judge, presiding.

Messrs. BEACH & HODNETT, and Mr. ROBERT HUMPHREY, for the appellants: .

Relators must set forth, in their petition, every material fact necessary to show that it was the plain legal duty of the board of supervisors to make the appropriation. *Hall* v. *People ex rel.* 57 Ill. 307; *People ex rel.* v. *City of Elgin,* 66 id. 507; *People ex rel.* v. *Davis,* 93 id. 133.

The statute upon which this proceeding is based, was not passed until after the bridge was swept away, and has a prospective operation only. *Thompson* v. *Alexander,* 11 Ill. 54; *Conway* v. *Cable,* 37 id. 82; *Robinson* v. *Rowan,* 2 Scam. 499; *Knight* v. *Begole,* 56 Ill. 122; *In re Tuller,* 79 id. 99; *Marsh* v. *Chestnut,* 14 id. 223; *Town of La Salle* v. *Blanchard,* 1 Bradw. 635; *People ex rel.* v. *Thatcher,* 95 Ill. 109; *Newkirk* v. *Chapron,* 17 id. 384.

There was no emergency as contemplated by statute laws of 1883, section 19, page 142.

There should be proof that the bridge was part of a public highway. *People ex rel.* v. *Supervisors,* 47 Ill. 256.

To constitute a highway by dedication, there should be satisfactory proof of an intent to dedicate. *Kelly* v. *City of Chicago,* 48 Ill. 390; *Fisk* v. *Havana,* 88 id. 208; *Manrose* v. *Parker,* 90 id. 583; *Chicago* v. *Johnson,* 98 id. 618; *Kyle* v. *Town of Logan,* 87 id. 64.

Messrs. BLINN & HOBLITT, for the appellees:

The board of supervisors have no discretionary power upon a proper petition for an appropriation to build a bridge. Rev. Stat. sec. 19, chap. 121; *People ex rel.* v. *Supervisors,* 100 Ill. 640.

Where a bridge in a public highway was suddenly destroyed, immediately before the statute took effect authorizing appropriations to be made by the board of supervisors after a bridge had been rebuilt, if the bridge was rebuilt after the statute took effect, its provisions would apply.

Proof that a road was traveled by the public as a highway, and is recognized and kept in repair by the authorities having charge of public highways, raises a legal presumption, subject to be rebutted, that such road is a public highway. *Eyman* v. *People*, 1 Gilm. 8; *Nealy* v. *Brown*, id. 12; *Railroad Co.* v. *Adler*, 56 Ill. 344; *Railroad Co.* v. *Benton*, 69 id. 174.

By the statutes of this State, bridges across streams in public highways, at or near town lines, are required to be rebuilt, when destroyed, jointly by the two towns, the commissioners of highways of the two towns agreeing as to the proportion to be paid by each town. Sec. 21, chap. 121, Road and Bridge law.

Mr. Justice Magruder delivered the opinion of the Court:

There was a public highway on the line between the towns of West Lincoln and Sheridan, in Logan county. In the fall and winter of 1883 the commissioners of highways of these towns built an iron bridge, upon stone abutments, over Sugar creek, at a point where said highway crossed the creek, and where the creek crossed the line between the towns. The bridge cost $4360, one-half of which is $2180. The board of supervisors of the county paid $1000 of the $2180, but declined to pay any more. The highway commissioners filed their petition in the circuit court of Logan county, at the September term, 1884, for a *mandamus* to compel the board to appropriate the remaining $1180 towards paying for the cost of the bridge. On the trial, the jury found the material facts, under written instructions from the court, in favor of the petitioners, and thereupon the court ordered the writ of *mandamus* to issue, as prayed for. Upon appeal to the Appel-

late Court for the Third District, the judgment of the circuit court was affirmed, and a further appeal is prosecuted from the Appellate Court to this court.

The 19th section of the act of 1883, in regard to roads and bridges, (Hurd's Stat. 1885, chap. 121, p. 1050,) is as follows: "When it is necessary to construct or repair any bridge over a stream, or any approach or approaches thereto, by means of an embankment or trestle work on a public road in any town, or over or across a town line, in which work the town is wholly or in part responsible, and the cost of which will be more than twenty cents on the one hundred dollars on the latest assessment roll, and the levy of the road and bridge tax for that year in said town was for the full amount of sixty cents on each one hundred dollars allowed by law for the commissioners to raise, the major part of which is needed for the ordinary repair of roads and bridges, the commissioners may petition the county board for aid, and if the foregoing facts shall appear, the county board shall appropriate from the county treasury a sum sufficient to meet one-half the expenses of the said bridge or other work, on condition that the town asking aid shall furnish the other half of the required amount. The expenditure of these joint funds shall be made by the commissioners and two persons appointed by the board of supervisors, and any surplus funds appropriated by the county board after the completion of the work, shall be paid into or lapse into the county treasury: *Provided, however,* that before any bridge or approaches as contemplated as above, shall be constructed or repaired under the provisions of this section, the commissioners shall make a careful estimate of the probable cost of the same, and attach thereto their affidavits that the same is necessary, and will not be made more expensive than is needed for the purpose desired, and such estimate and affidavit shall be filed with the petition: *Provided,* that in case of some emergency arising from the sudden destruction or serious damages to a bridge or its ap-

proaches, when delay in repairing or rebuilding the same would be detrimental to the public interest, such petition to the county board may be presented during the progress of the work or after its completion, and if the facts appear as contemplated by this section, then the county board shall appropriate one-half of such cost, with like condition that the town pay the other half."

The last petition presented to the county board under this section, asking for an appropriation of half the cost of the bridge, was so presented on June 4, 1884, and after the completion of the bridge.

The first question is, whether, under the proven facts in the case, there was such an *emergency* as was required by the second proviso of the above section, to justify the presentation of the petition to the county board after the completion of the bridge. In February, 1883, the wooden bridge over Sugar creek, which had been there prior to that time, and had been built on piles, was swept away by the floods. About the last of April, 1883, the highway commissioners of the two towns had a meeting, and made an agreement to rebuild the bridge, each town to pay an equal part of the expense. In May or June, 1883, they accordingly made a contract with one Kirkpatrick to construct a new pile bridge at the point where the old one had been washed away. They also presented a petition to the county board in June, 1883, asking for an appropriation of $550 to aid them in rebuilding, which appropriation was made, but never used, for reasons hereafter stated. Kirkpatrick went to work in August, 1883, and found that it would be impossible to build a pile bridge, because the water had washed away the earth in which the piles of the old bridge had stood, leaving a foundation of hard-pan and rock. Into this foundation wooden piles could not be driven. On August 25, 1883, the commissioners released Kirkpatrick from his contract, and determined to build a wooden bridge on stone abutments. Finding, however, that an iron bridge

on stone abutments would only cost $75 or $100 more than a wooden one, they proceeded at once to advertise for bids, and on September 10, 1883, made contracts for the construction, at a cost of about $4360, of a stone and iron bridge, which was completed in December, 1883. The commissioners presented a second petition to the county board on September 11, 1883, setting up the making of the contracts of September 10, 1883, and the reasons and necessity therefor, and asking that the previous appropriation of $550 be revoked, and that a new appropriation be made of half the cost of the stone and iron bridge, as fixed by the contracts. The board, however, only appropriated $1000, and refused any further sum, and appointed two of their number to superintend the construction of the bridge. The commissioners filed a third petition for $1180, as above stated, after the bridge was completed, and under the second proviso of the 19th section, above quoted. The prayer of this petition was refused.

The jury found, and the evidence warranted the finding, that the public necessities required a new bridge to be built in the place of the old one, at as early a date as possible; that the commissioners were guilty of no delay in making their contract with Kirkpatrick, as the water in the creek was too high in the spring and early summer of 1883 to do any work, and if Kirkpatrick was guilty of any unnecessary delay after the contract was made with him, they were not responsible for it; that as soon as possible after ascertaining the impossibility of building a bridge on piles, they took measures to build one on stone abutments; that the contract for the stone and iron bridge could not have been let at all in 1883, if the commissioners had waited before advertising for bids until after the board of supervisors met, on September 11, 1883, which was the date of their first meeting after July 9, 1883, and that the commissioners were justified, by the exigencies of the case, in letting the contracts, as they did, on September 10, 1883.

If the petition filed with the board on September 11, 1883, which informed that body of the contracts on the very day after they were made, was sufficient to justify an appropriation of $1000, it was sufficient to justify an appropriation of the full amount asked. It gave the precise figures at which the contract had been let, after fifteen days' notice, by advertisement, of such letting, and, in furnishing the contract figures, it at the same time furnished as careful an estimate of the cost of the bridge as could be made. Upon the supposition that it sufficiently showed the facts required by section 19, to authorize an appropriation of any part of the amount demanded, the county board had no discretion to refuse the whole amount named in the petition. (*The People ex rel.* v. *Supervisors*, 100 Ill. 640.) The application was not made too late because the commissioners had already let the contract. (*Town of New Boston* v. *Supervisors*, 110 Ill. 197.) But whether the petition filed in September was sufficient or not, that filed in June, 1884, complied with the requirements of the statute. An emergency had arisen from the sudden destruction of the old bridge. Delay in building the stone and iron bridge, after the impracticability of building one on piles had been made manifest, would have been detrimental to the public interest.

It is said that as the old bridge was swept away while the law of 1879 was in force, and before the law of 1883 went into effect, the latter law can not be made to apply to an emergency which arose before its passage. The act of 1883, above named, went into force on July 1, 1883, and repealed the act of 1879, "in regard to roads and bridges," etc., which had been theretofore in force since July 1, 1879. If the objection made is a sound one, then, in case a bridge had been suddenly destroyed one day before July 1, 1883, the highway commissioners could not proceed to build a new one in its place and apply to the county board "during the progress of the work, or after its completion," for money enough to pay for half its

cost, even though a delay in commencing the construction of the bridge until the next meeting of the board would be seriously detrimental to the public interests. Such a result could not have been intended by the legislature. It makes no difference that the old bridge was destroyed before the new law went into effect. The water in the creek continued so high that work could not be begun on the new bridge until after July 1, 1883. The same emergency, therefore, which arose before that date, continued to operate as a spur to prompt action after that date. The material fact was, that delay in rebuilding would be detrimental to the public interests. When such detriment to public interests was threatened, it was the duty of the commissioners to let the contract at once. It was not material whether the emergency which made it so injurious to indulge in delay, occurred before or after the passage of the new law. It is true that a retrospective effect will not be given to a statute unless it clearly appears that such was the intention of the legislature. But this act of 1883 is not made to have a retroactive operation because a proceeding under it has grown out of an emergency that occurred before its passage. No accrued rights are affected. No existing liabilities are increased or diminished. The county board was liable to pay half the cost of the bridge under the old law, and it is liable to the same extent, and no more, under the new law. The change made by the second proviso of the 19th section was merely in the time of the application for an appropriation. Upon a given state of facts such application could be made, by the terms of that proviso, during or after the building of the bridge, whereas, theretofore, it could only be made before the work on the bridge was begun.

It is next objected that the road, of which the bridge in question was a part, was not "a public road," in the sense in which those words are used in section 19 of the act of 1883. The board of supervisors appropriated $550 in June, 1883, to aid in building a wooden bridge at the point where the stone

and iron bridge has since been built, and made no objection, at that time, that the road was not a public highway. The board again appropriated $1000 in September, 1883, to aid in constructing this very iron and stone bridge, and appointed two of its members to superintend such construction, and yet, at that time, made no objection to the road as not being a public highway.

The second instruction given for appellees is claimed to be erroneous, as not requiring sufficient proof of the existence of a public road. That instruction is as follows: [5]

"The court instructs the jury, that if they believe, from the evidence, that the road on the town line between the towns of West Lincoln and Sheridan, across Sugar creek, had been ten years an open public road, and had been recognized as such by the owners of land over which it runs, and also by the public authorities of the towns of West Lincoln and Sheridan, as a public highway, and worked and repaired, and bridges built across the stream by said authorities, then that is sufficient proof of the existence of a public highway in this case."·

Under this instruction the jury found that a public highway existed at the point where the bridge was built, and the proof in the record abundantly sustains their finding. It is true that ordinarily, where the existence of a public highway is directly in issue, it must be proven either that the road has been laid out in pursuance of a law of the State, or that it has been established by dedication, or used by the public as a highway for twenty years; but where, as here, the existence of the highway is only collaterally in issue, it was sufficient for the appellees to introduce such proof as made a *prima facie* case in favor of the existence of a public road. Appellees did this, and thereby shifted the burden upon appellants to disprove the *prima facie* case so made, which appellants failed to do. A similar instruction to the one above quoted was held to be good in *Eyman et al.* v. *The People*,

1 Gilm. 8, where it was said: "If a road is used and traveled by the public as a highway, and is recognized and kept in repair as such by the county commissioners and supervisor, whose duty it is by law to open and repair roads, proof of these facts furnishes a legal presumption, liable to be rebutted, that such road is a public highway." (*Nealy* v. *Brown et al. County Comrs.* 1 Gilm. 12; *Chicago and Alton Railroad Co.* v. *Adler,* 56 Ill. 344; *Illinois Central Railroad Co.* v. *Benton,* 69 id. 174.) We are therefore of opinion that no error was committed by the giving of the second instruction asked for by the petitioners, and that, under the facts of this case, the proof of a public road was sufficient.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*