# BOARD OF SUPERVISORS

## V.

## THE PEOPLE EX REL. COMMISSIONERS OF HIGHWAYS.

*Bridges—County Aid—Power of Commissioners of Highways—Mandamus—No Discretion in County Board—Pleading.*

1. The Commissioners of Highways have the exclusive power to determine when a necessity exists for constructing a bridge and the kind of bridge required, and to decide whether the conditions exist which entitle the town authorities to call for county aid.

2. The Commissioners' estimate of probable cost of a proposed bridge is not a part of the "official business" of the Board, which is required to be done at a regular or special meeting, or of the "official acts and proceedings" which are required to be kept in its record book.

3. The law does not require, in all cases other than those of an emergency arising from sudden destruction or serious damages, that the County Board shall actually appropriate from the county treasury, a sum sufficient to meet one-half the expense of a proposed bridge before it can be built or the contract therefor let by the Commissioners.

4. Where it appears, upon a petition for mandamus to compel a County Board to make an appropriation from the County Treasurer of a sum suffi-

cient to meet one-half the expense of a proposed bridge, that the statutory conditions precedent have been substantially complied with, the writ will be awarded.

[Opinion filed December 9, 1887.]

Appeal from the Circuit Court of Kankakee County; the Hon. O. T. Reeves, Judge, presiding.

Messrs. H. L. Richardson and C. R. Starr, for appellant.

Messrs. William Potter and Stephen R. Moore, for appellees.

Baker, J. This was a petition for a mandamus by the people on the relation of the Commissioner of Highways of the town of Rockville against the Board of Supervisors of Kankakee County to compel them to make an appropriation from the county treasury, under the provisions of section 19 of the act in force July 1, 1883, in " regard to roads and bridges in counties under township organization " of a sum sufficient to meet one-half the expense of a bridge to be constructed over Forked Creek, where the same is crossed by the public highway between section 5 and section 8 in said town. The Circuit Court, on the trial, awarded a peremptory writ of mandamus to compel the Supervisors to grant the aid demanded.

Most of the material questions involved in the controversy arise upon the rulings of the court sustaining a demurrer to the 3d, 4th, 5th, 6th and 7th pleas, and overruling a demurrer to the replications to the 8th plea. It appeared from the petition, estimate and affidavit which were presented to the Board of Supervisors at their July meeting, 1886, that the bridge was needed, the town was wholly responsible for the work, and the total estimated cost of building it was $1,000 ; that the cost of building the bridge would be more than 20 cents on the $100 on the latest assessment roll of the town, and that the levy of the road and bridge tax for that year in said town was for the full amount of 60 cents on each $100

allowed by law for the Commissioners to raise, and that the major part of it was needed for the ordinary repairs of roads and bridges. The 4th, 5th and 6th pleas were alike in respect to legal principle; the 4th averred that the major part of the road and bridge tax was not needed for the ordinary repairs of roads and bridges in the town, but on the contrary, said tax was enough for the ordinary repairs of roads and bridges and a surplus of at least $1,000 for erecting said bridge; the 5th averred that the road and bridge money on hand taken with the 60 cents levied, etc., was sufficient to pay the cost of the bridge and that said money was not needed for the payment of outstanding orders and was not needed, nor the major part thereof, for the ordinary repair of roads and bridges, but was available for building said bridge; and the 6th plea averred that the amount of money necessary to pay the cost of the bridge was not needed for the ordinary repair of roads and bridges, and that the Commissioners had in their treasury and with the tax levied sufficient money for which there was no other superior demand to pay the cost of said bridge. It will be noted that not one of these pleas traversed the fact that the levy that year in the township of the road and bridge tax was for the full amount of 60 cents on each $100 or denied that the petition which the Commissioners had presented to the Board of Supervisors stated that the major part of said tax was needed for the ordinary repairs of roads and bridges in the town. The matters of making improvements upon the public roads, of determining when a necessity exists for constructing a bridge over a stream, of determining the character of the bridge to be built and letting the contract to build it, of determining—within a certain maximum—what per cent. of tax shall be levied on the property of the town for road and bridge purposes and the payment of outstanding orders, and of deciding whether or not the major part of the sixty cents levied, allowed by law, is needed for the ordinary repair of roads and bridges, are all, by the statute, intrusted exclusively to the judgment and discretion of the Commissioners of Highways of the several towns. As was said by the Supreme Court in New Boston v. Board of Supervisors, 110

Ill. 197, and reiterated in Supervisors v. The People, 118 Ill. 459, "as the Legislature has seen fit to commit such matters to the management of the local officers of the town, it is not the province of the courts, by judicial construction, to place it elsewhere."

The town authorities are better qualified to judge than are the courts, what amount of the road and bridge tax is needed for the ordinary repair of the roads and bridges in their town, and if the matter was left to the discretion of the County Board, it might frequently interfere with the proper operation of the statute and defeat the evident intention of the Legislature. We think the Circuit Court properly sustained the demurrer to the 4th, 5th and 6th pleas.

The substance of the 7th plea was that the estimate of $1,000 was based upon the purpose to build an iron bridge; that an iron bridge was not necessary, and that a good, sufficient and suitable wooden bridge could be built at one-half the expense, and would not cost more than 20 cents on the $100 on the latest assessment roll in said town. We have already stated that the matter of determining the kind of bridge to be constructed is vested wholly and only in the local authorities of the town. The two cases above cited by us seem to be very much in point. The plea was bad, and the court did right in sustaining the demurrer to it.

The substance of the 3d plea was that the estimate made by the Commissioners of Highways of the probable cost of the proposed bridge was not made at a regular or special meeting of the Board of Commissioners; that there is no official act by said Board of Commissioners making such estimate, and no record of the same. It is urged by appellants that the tenth section of the act of 1883 provides that "no official business shall be transacted by the Board, except at a regular or special meeting," and also that the Town Clerk shall be *ex officio* clerk of said Board, and shall keep a record of all the official acts and proceedings of the Board in a well-bound book, to be provided for that purpose, which record shall be signed by the president and clerk." We think these provisions have no application to the matter in hand. The various

sections of the statute must be construed together, and each section and every provision should receive a reasonable construction. The nineteenth section says that the Commissioners may petition the County Board for aid, and that they shall make a careful estimate of the probable cost and attach thereto their affidavits that the bridge is necessary, and will not be made more expensive than is needed for the purpose desired; and further, said section makes provision that " such estimate and affidavit shall be filed with the petition." It would seem it is no more necessary the " estimate" should be entered upon the record of the Board than that the " affidavit," " the petition for aid," the petition for a writ of mandamus, and the various pleadings filed by the Commissioners in this suit should be entered upon such record. All of these various papers may, in one sense, be considered as " official acts and proceedings of the Board." It is the evident intention of the statute that the petition, estimate and affidavit shall, all three, be filed with and presented to the Board of Supervisors of the county. So, also, it will hardly be contended that the Commissioners, in the performance of the duty imposed by the fifth section of the act, to take possession of and keep under shelter, when not in use, all scrapers, plows and other tools belonging to their towns, can do no act in furtherance thereof, except it be at a regular or special meeting of the Board; and yet such taking possession of and keeping such tools is as much a part of the official business of the Commissioners as is making the estimate of probable cost of a bridge and swearing to the statutory affidavit. Just what the " official business" is that must be done at a regular or special meeting, and what the " official acts and proceedings " are that are required to be kept in the record book of the Board, it is wholly unnecessary now to specify. In our opinion there was no error in holding that the demurrer to the plea in question was well taken.

The 8th plea was to the effect that the relators had erected and completed the bridge without county aid, and that all expenditures and expenses in the building of said bridge was under and by direction of said Commissioners alone. The first replication to this plea was that after relators had

presented their petition for aid to the County Board, they let the contract for building the bridge relying upon the aid asked of the county; that in pursuance of such contract the bridge had been built, and that one-half the expense thereof had been paid by the town, and the other half of the expense, to wit, the half to be met by the appropriation from the county treasury, was still due and unpaid.

The second replication was to the effect that the bridge was not erected without the county aid that had been asked for by relators, but was built on the faith and liability of the county to pay one-half the expense, and not on the credit and at the expense of the town alone. This case does not fall under the last *proviso* of Sec. 19, where, in certain cases of emergency, a bridge may be repaired or rebuilt, and the petition to the County Board may be presented during the progress of the work or after its completion. But, we do not understand the law to be that in all cases other than those of an emergency arising from sudden destruction or serious damages, it is absolutely essential that the County Board should actually appropriate from the county treasury a sum sufficient to meet one-half the expense of the proposed bridge, before such bridge can be built or the contract therefor let by the Commissioners.

The only conditions precedent that we find in the statute to the building of a bridge with county aid are, first, that the Commissioners shall present to the County Board such a petition for aid as is required by Sec. 19; second, the matters stated in the petition must be true; third, that before such bridge can be constructed under the provisions of said section, the commissioners must make a careful estimate of the probable cost of the same and attach thereto their affidavits that the same is necessary, and will not be made more expensive than is needed for the purpose desired; and fourth, such estimate and affidavit must be filed with the petition. It appears from the record before us that all these conditions were substantially complied with. The required papers were presented to the Board of Supervisors at their July meeting, 1886. The duty then devolved upon them to make the appropriation; the statute is mandatory, and they had no discretion to refuse the

aid sought. The Commissioners having done all that was required of them, were authorized to proceed with the construction of the necessary bridge and rely upon the legal liability of the county to pay one-half the expense thereof; and the latter should not now be allowed to take advantage of its own wrong. There was no error in overruling the demurrer to the replications. All material facts that were alleged in the petition of the relators that were not traversed by the pleas of the defendants stood admitted upon the record. It was, therefore, unnecessary for the relators to prove or for the court or jury to find either that the cost of the bridge exceeded 20 cents on the $100 on the last assessment roll of the town, or that the levy of the road and bridge tax for the year in said town of Rockville was for the full amount of 60 cents on each $100.

The other objections urged by appellants against the judgment we regard as too unimportant and technical to require special attention; suffice it to say that, in our opinion, such objections are not well taken.

The peremptory writ of mandamus was properly awarded for the sum of 406.21, that being one-half of the actual cost of the construction of the bridge.

Finding no error in the record that should reverse, the judgment is affirmed.

*Judgment affirmed.*